United States District Court
Western District of Texas
Austin Division

| | |
|---|---|
| United States of America,<br>v.<br>Joshua Colin Honigberg,<br>Defendant. | No. 20-CR-175 (LY) |

**Memorandum in Opposition to Defendant's Motion to Dismiss**

The government respectfully submits this memorandum in opposition to the defendant's motion to dismiss. Dkt. No. 60 ("Def. Mot."). The defendant contends that Second Superseding Indictment fails to allege facts that constitute a federal crime and that his Sixth Amendment right to be "informed of the nature and cause of the accusation" has been violated. Defendant has been placed on adequate notice, the indictment alleges his offense conduct with specificity and his motion should be denied.

First, appellate courts have routinely upheld §§ 5845(f) and 5861(d) against void-for-vagueness (or, here, lack of specificity) challenges in circumstances like this case because the statutes include the crucial limitation that a device not designed or redesigned as a weapon is not illegal. The statute thus gives individuals adequate notice of what conduct is criminal by excluding objects not designed to cause or capable of causing harm or injury.

Defendant primarily claims his constitutional due process right to notice of the charge against him was violated because the word "firearm" was not used in the indictment. This, after filing a Motion for Bill of Particulars complaining of lack of specificity (Dkt. No. 30). On February 1, 2021, Defendant sought a Bill of Particulars for the dual purpose of informing him of the nature of the charges against him "with sufficient precision to enable him to prepare his defense" and to avoid or minimize the danger of surprise at trial. Defendant urged the government to "specifically detail what it is the government believes constitutes the destructive device" to allow

him to prepare his defense (Doc. No. 30 at 3). Defendant now complains that the use of a synonym (destructive device) of a defined term (firearm) fails to give him adequate notice. The respective terms, “firearm” and “destructive device” are statutorily defined in Title 26, U.S.C. § 5845. More precisely, under § 5845(a) the term “firearm” means a “destructive device”. The government submits that the Second Superseding Indictment actually provides the Defendant *greater* notice because use of the words “destructive device” precludes the possibility that the unregistered ‘firearm’ Defendant is charged with possessing is alleged to be a sawed-off shotgun, machine gun, silencer or other type of proscribed “firearm.” Moreover, the specific definition/ applicable code sections defining both a firearm and a destructive device are alleged in the Second Superseding Indictment. Charging Defendant with possessing a “firearm” would be toothless, non-specific and omit the exact specificity Defendant claims to seek notice of “in order to be fairly informed of the charges against him”. In fact, Defendant acknowledges in his Motion for Bill of Particulars that to meet its burden at trial, the Government will have to prove that the Defendant knowingly possessed a destructive device as defined by 26 U.S.C. § 5845(f) (Doc. No. 3 at 3). True, the government will need to prove the more expansive definition of a specific type of “firearm” under the Act - - here, a destructive device. Eight different types of “firearms” are proscribed under § 5845. A destructive device is merely one of them.

Courts look to the objective characteristics of a device to determine whether it is a “destructive device.” The purported purpose of a device is not an element of the crime and is irrelevant so long as its objective characteristics are those of a destructive device, including the capability of causing harm and destruction. Here, the government charged Defendant in the Second Superseding Indictment for knowingly possessing a “destructive device” as defined in 26

U.S.C. §§ 5845(a)(8) and 5845(f)(3). A "destructive device" under 26 U.S.C. § 5845(f)(1)-(3) means:

> The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket have a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name know which will, or which may be readily converted to expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized a particularly suitable for sporting purposes; and ***(3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled***. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon….

The statute is not limited to bombs, explosives, rockets, missiles or mines; it encompasses home-made devices and ***combinations of parts*** designed for use in converting any device into a destructive device, like those at issue here. In this case, the government examined the contents of a Pelican case and concluded that the combination of parts enclosed in the case were indeed designed for use in converting any device into a destructive device and from which a destructive device could readily be assembled - - and had been. Thus, whether the defendant's device was a "destructive device" is a question of fact squarely within the jury's province. Once a factual determination is made that a device is a "destructive device" pursuant to § 5845(f)(3) it necessarily follows that it ***is*** a "firearm" as that term is statutorily defined in § 5845(a)(8). Defendant's position that the Second Superseding Indictment fails to charge a crime is really just a premature attack on the sufficiency of the evidence for the indictment.

Defendant's notice regarding the government's theory of the case is not limited to the Second Superseding Indictment. Pretrial hearings on February 12, 2021 were held where only one "device" and the combination of parts constituting that device was discussed. The evidence has

not changed since that time. The same "device" that was the subject of the pretrial hearing is the same device that constitutes the "combination of parts" contemplated in the Second Superseding Indictment. Extensive pretrial testimony from the government's FBI Bomb Tech describing each of the components contained in the Pelican case has been given in this case. The Defendant knows precisely what 'combination of parts' the government has alleged constitutes the 'destructive device'. Moreover, Special Agent Bomb Tech Wilson limited his testimony to the combination of parts in the Pelican case[1], concluding that the combination of parts had no legitimate commercial or social utility.

Previously, Defendant claimed that an indictment for violations of 26 U.S.C. § 5861(d) must provide a description of the destructive device charge to give the defendant notice of what he or she is defending against. As mentioned above, defendant filed a motion for bill of particulars, requesting that the Court order the government to allege specific facts about the device so that he would be fairly informed of the charges against him and have adequate protection against further prosecution for the same offense. In response, the government presented the Second Superseding Indictment setting out specifically what defendant was alleged to have possessed in violation of § 5861(d), including the exact combination of parts that constituted the proscribed destructive device, to wit: a combination of parts enclosed in a plastic Pelican case containing four fused, duct tape wrapped powder devices, two shotgun shells, four road flares, two smoke grenades, one commercially-available lighter, one caustic substance grenade, precut length of

[1] Defendant is aware that he also possessed fusing, precursor chemicals, explosive powder, smoke grenades, ignition sources (such as lighters) and fragmentation throughout other areas of his apartment. Here, Defendant seeks specific notice in order to preclude the government from advocating that these other, separate 'combination of parts' could also constitute a destructive device under the statute and indictment. The subject of the proscribed device set out in the Second Superseding Indictment is the Pelican case and its contents. The existence and relevance at trial of non-assembled parts validates the government's position that *assembled* parts in the Pelican case were designed for use in converting a device into a destructive device.

fuse, one fused pyrotechnic device and thirteen metal tire deflation devices; that was not registered to him in the National Firearms Registration and Transfer Record (Doc. No. 50).

Defendant has had an opportunity to inspect the Pelican case and fragmentation (13 caltrops/tire deflation spikes) in this case at both the FBI offices in Austin and in court. Moreover, Defendant has received FBI laboratory reports of explosive material contained in the combination of parts enclosed in the Pelican case, as well as video and photographs of each of the combination of parts constituting the destructive device.

The device Defendant possessed was a "destructive device" within the meaning of the statute.

## Argument

### I. The Second Superseding Indictment sufficiently informs Defendant of the charge against him.

Defendant claims that omission of the word 'firearm' merits dismissal for failure of the indictment to state an offense. Not so. When considering such a motion, the court is "required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).

The Federal Rules of Criminal Procedure only require the indictment to "be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A constitutionally sufficient indictment fairly informs the defendant of the charge he faces and is precise enough to preclude the risk that the defendant may be prosecuted for the same offense in the future. *United States v. Caldwell*, 302 F.3d 399, 410 (5th Cir. 2002). Moreover, "the test of the validity of an indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether is conforms to minimal constitutional standards." *Caldwell* at 410.

Defendant is correct that Second Superseding Indictment does not use the word "firearm". However, Defendant's argument elevates form over substance. To convict the Defendant of Count One of the Second Superseding Indictment the Government will necessarily have to prove that the Defendant knowingly possessed a destructive device, as defined by §§ 5845(a) and 5845(f)(3) and that the device was not registered to him in the National Firearms Registration and Transfer Record. To include the word "firearm" in the indictment would not have been sufficient notice for the Defendant. Defendant notes in his Motion for Bill of Particulars that 26 U.S.C. § 5845 provides eight definitions of "firearm," each of which contains specific coverage criteria. Defendant suggests that for purposes of clarity the Government should have drafted the indictment to include the word "firearm"; but it does not follow that Count One is fatally defective by omission of this word. Again, a "destructive device" is a firearm by statutory definition. Defendant's argument that by not using the word "firearm" the Government has not set forth the elements of the offense is meritless. The ultimate issue is clarity. Defendant cannot credibly claim confusion stemming from the omission of the word "firearm" in the indictment when the indictment alleges a specific type of statutorily defined firearm, and the combination of specific parts that constituted that firearm. An indictment should be upheld "unless it is so defective that it does not, by any reasonable construction, charge an offense." *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016). That is not the case here.

Courts have routinely rejected void-for-vagueness challenges to the definition of "destructive device" found in 26 U.S.C. § 5845(f). The statute reads, in relevant part:

> The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; . . . (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus

> ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 7684(2), 7685, or 7686 of title 10, United States Code; or any other device which the Secretary finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.

26 U.S.C. § 5845(f). Courts have found that the statute is not vague because it "contains the crucial limitation that a destructive device does not include any device not designed or redesigned for use as a weapon." *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972). "The due process clause, of course, requires that penal statutes define criminal offenses with sufficient specificity so that an ordinary person can understand what conduct is prohibited. Section 5845(f) meets this test: 'On its face, the definition of a destructive device gives fair notice to a person of ordinary intelligence that it includes any combination of parts intended to be used as a bomb or weapon and from which a bomb or weapon can be readily assembled.'" *United States v. Price*, 877 F.2d 334, 337 (5th Cir. 1989) (quoting *United States v. Morningstar*, 456 F.2d 278, 281 (4th Cir. 1972) and citing *United States v. Daniel*, 813 F.2d 661 (5th Cir. 1987)). In determining whether a "combination of parts" is a destructive device for purposes of § 5845(f)(3), the courts have not considered "intent" as a factor where the completed device would have no legitimate commercial or social utility. See, e.g, *United States v. Hull*, 456 F.3d 133, 143 (3d Cir. 2006)(in a case involving unassembled parts, where there is no ambiguity as to the nature of the assembled device, intent is irrelevant).

In this case, there is no dispute that the defendant's device had explosive materials in it. The Government anticipates that SABT Wilson, and perhaps additional witnesses will testify at trial that the combination of parts in the Pelican case had no legitimate commercial utility and was designed for use in converting the device into a destructive device. If the jury accepts this testimony, the Defendant's intent or lack of intent to use it as a weapon is irrelevant. Here, the evidence will demonstrate that the defendant's device had the objective characteristics of a

weapon—especially 13 metal tire spikes (caltrops) as shrapnel and the content of the Pelican case's overall configuration—and a jury could thus conclude that it was a "destructive device."

Additionally, courts have held that "intent is not a required element for proving the existence of a 'destructive device' under 26 U.S.C. § 5845. Rather, 'the question of the possessor's intent is relevant only when the objective characteristics of the device demonstrate that it may not be a weapon.'" *United States v. Jackman*, 72 F. App'x 862, 865 (3d Cir. 2003) (quoting *United States v. Johnson*, 152 F.3d 618, 627 (7th Cir. 1998)). In *Jackman*, for example, the defendant was convicted of possessing "a cardboard tube approximately 6 inches in length containing explosive powder, encased in metal roller bearings, with an ignition fuse." *Id.* It was "undisputed that the device, referred to as an improvised explosive device ('IED'), was made from a pest control device ('PCD') sold on the commercial market to deter geese and other wildlife by making a loud noise when its fuse is ignited. The PCD had been altered by adding an explosive powder Pyrodex into an empty chamber and by gluing roller bearings to the outside of the PCD." *Id*. at 863-64. The defendant challenged his conviction by arguing that "prosecutors failed to demonstrate that [his] device was not made for a legitimate use, i.e., to scare geese." *Id*. at 865. The court rejected this argument: "Expert testimony established the presence of explosive mixtures and explosives in the device, some of which were added to the commercially available device. Roller bearings were affixed by epoxy to the outside of the device and evenly spaced to provide for uniform fragmentation. This had the potential to cause injury or death." *Id*.[2] Similarly, in this case, the FBI SABT witness testified at the pretrial hearing that the device had

[2] On collateral review, the defendant argued that he was actually innocent because "the destructive device was not a destructive device but was merely a pest control device." *United States v. Jackman*, 2006 WL 3791331, at *15 (W.D. Pa. Dec. 22, 2006). The court rejected that argument, saying that the defendant "ha[d] no serious argument to rebut the evidence that he possessed a destructive device." *Id.*

characteristics, including fragmentation, that are consistent with that of a weapon—that is the potential to cause injury or death. The question of whether the device at issue was a destructive devices should thus be committed to the jury. *See also Johnson*, 152 F.3d at 626 (noting that courts have "considered it a question of fact for the jury as to whether the design was, objectively speaking, a destructive device within the meaning of the statute")

## II. The Government is not required to allege the word "firearm" in the indictment to prove that the destructive device he possessed had the characteristics that brought it within the statutory definition of a firearm.

Defendant notes in his Motion to Dismiss, (Doc. No. 60, p. 9) "the *mens rea* element of a violation of § 5861(d) requires the Government to prove that the defendant knew that the item he possessed had the characteristics that brought it with the statutory definition of a firearm. *Rodgers v. United States*, 522 U.S. 252, 254 (1998). Here, then, the government must show that the Defendant knew the device (combination of parts designed for use in converting his device into a destructive device) he possessed ***had the characteristics*** that brought it within the within the statutory definition of a firearm. Under *Staples v. United States,* 511 U.S. 600, 619 (1994), cited by the Defendant, the government should be required to prove that Defendant 'knew of the features of his" firearm "that brought it within in the scope of the Act." The Government again submits this is question of fact for the jury. Importantly, as the Fifth Circuit emphasized in *United States v. Anderson*, 885 F.2d 1248, 1250 (5th Cir. 1989), a conviction under § 5861(d) requires the government to prove that the defendant "knew [what he possessed] was a "firearm" in the Act sense, not that he (or she) merely knew it was a firearm" under laymen's terms. Simply put, if Defendant knew he possessed the combination of parts in the Pelican case, it falls under the Act's definition as a "firearm" pursuant to § 5845(a).

**Conclusion**

For these reasons, the Court should deny the defendant's motion to dismiss.

Respectfully submitted,

ASHLEY C. HOFF
United States Attorney

By: */s/ Grant Sparks*
Grant Sparks
Assistant United States Attorney
903 San Jacinto, Suite 334
Austin, Texas 78701
(512) 916-5858 (phone)
(512) 916-5854 (fax)
Grant.Sparks@usdoj.gov

**Certificate of Service**

I certify that on May 5, 2021, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☒ The CM/ECF system will send notification to the following CM/ECF participant(s):

Charlotte A. Herring, Esq., counsel for defendant

*/s/ Grant Sparks*
Grant Sparks
Assistant United States Attorney